**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALIBABA GROUP HOLDING LIMITED,<br><br>                     Plaintiff,<br><br>          -against-<br><br>ALIBABACOIN FOUNDATION a/k/a ABBC FOUNDATION, ABBC BLOCK CHAIN IT SOLUTIONS LLC, ALIBABACOIN GENERAL TRADING FZE, ALIBABACOIN FOUNDATION LLC, JASON DANIEL PAUL PHILIP, HASAN ABBAS,<br><br>                     Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Alibaba Group Holding Limited, ("Alibaba Group Holding" or "Plaintiff") states the following for its Complaint against Defendants ALIBABACOIN Foundation a/k/a ABBC Foundation ("ABBC"), ABBC Block Chain IT Solutions LLC, Alibabacoin General Trading FZE, Alibabacoin Foundation LLC, Jason Daniel Paul Philip, and Hasan Abbas (collectively, "Defendants").

## INTRODUCTION

This action arises from Defendants' unlawful scheme to misappropriate Plaintiff's renowned brand name in order to deceive investors in the U.S. and around the world.  With a single-minded focus to capitalize on Plaintiff's reputation for success, Defendants constructed a ploy to use Plaintiff's trademarked name "ALIBABA" to raise over $3,500,000 in Defendants' cryptoassets (so-called "AlibabaCoins" or "ABBC Coins") from investors through Initial Coin Offerings ("ICOs") that are neither registered nor approved by U.S. regulators.

Alibaba Group Holding owns numerous trademarks registered with the United States Patent and Trademark Office (the "USPTO") for the term "ALIBABA" and for other related terms. In addition, Alibaba Group Holding owns common law rights to these marks through their extensive and continuous use in New York and other States in the United States. Alibaba Group Holding and its operating subsidiaries (the "Alibaba Group companies," collectively "Alibaba") have spent many years, and substantial resources, building public confidence and consumer goodwill in these marks. As a result of these efforts, Alibaba Group Holding has become one of the most renowned and successful businesses in the world.

Defendants have elected to attempt a less laborious path to success. Rather than build independent value in their brand and the products and services they offer, Defendants have engaged in a willful and concerted campaign to cause the public to believe falsely that Alibaba is the source of Defendants' products and services, or that such products and services are endorsed or sponsored by, or otherwise associated or affiliated with, Alibaba. Defendants prominently feature trademarks owned by Alibaba Group Holding, in whole and without alteration, in countless instances in materials they make publicly available on the internet, including in offering materials that solicit investment from investors in the U.S. and elsewhere. And, lest there be any doubt in consumers' minds as to whether Defendants are associated with Alibaba Group Holding, those same materials brazenly and explicitly assert that is the case.

There is already *actual confusion* as to whether Alibaba is the source of Defendants' services and products, or whether such services and products are endorsed or sponsored by, or otherwise associated or affiliated with, Alibaba. Indeed, some news outlets have already begun reporting that Plaintiff and Defendants are affiliated, and others have speculated whether that is the case. Unless Defendants are enjoined from continuing their intentionally misleading use of

Alibaba Groups Holding's trademarks, they will continue to capitalize unfairly on the goodwill inherent in those marks, deceiving the public and impairing and diluting the value of those marks.

## NATURE OF ACTION

1.      This is an action at law and in equity for trademark infringement, false designation of origin, false advertising, dilution, and related wrongs.  Alibaba Group Holding's claims against Defendants arise under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), the common law of New York, and New York General Business Law § 360-*l*.

## THE PARTIES

2.      Alibaba Group Holding is a Cayman Islands company with its principal place of business in Hangzhou, People's Republic of China.

3.      Upon information and belief, Defendant ALIBABACOIN Foundation is a commercial organization based in Dubai, U.A.E., with offices in Dubai and Minsk, Belarus.  Upon information and belief, ALIBABACOIN Foundation is also known as AlibabaCoin Foundation, Alibabacoin Foundation, and ABBC Foundation.

4.      Upon information and belief, Defendants ABBC Block Chain IT Solutions LLC, and Alibabacoin General Trading FZE are business segments and/or subsidiaries of ABBC with offices in Dubai, U.A.E.

5.      Upon information and belief, Defendant Alibabacoin Foundation LLC is a subsidiary or affiliate of ABBC with offices in Minsk, Belarus.

6.      Upon information and belief, Defendant Jason Daniel Paul Philip is a Malaysian national residing in Dubai, U.A.E., and is the Founder and Chief Executive Officer of ABBC.

7.      Upon information and belief, Defendant Hassan Abbas is an individual residing in Dubai, U.A.E., and is the co-founder and Chief Technical Officer of ABBC.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the federal claims for trademark infringement, false designation of origin, false advertising, dilution, and related wrongs under 28 U.S.C. §§ 1331, 1338(a).  This Court has subject matter jurisdiction over the state claims under 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over the Defendants because Defendants are specifically targeting their products and services to, and soliciting investment from, consumers in New York and, more generally, the United States.  ABBC's CEO prominently states on the ABBC Website that:  "**[AlibabaCoin's] Blockchain technology** will be **the world's leading** software platform for digital assets . . . **We are planning to distribute this service to over 81 countries and allow an abundant supply of our solutions.**  We are truly going to become the leading blockchain specialists." (emphases added).  A true and correct copy of the Defendants' website is attached hereto as **Exhibit 1.**  Defendants' advertising and offering materials state the anticipated value of the ABBC Coin in U.S. dollars.  Further, Defendants' advertising materials explicitly note that they will make Defendants' cryptocurrency available on U.S.-based crypto-asset trading platforms (also known as "cryptocurrency exchanges"), including Gemini (based in New York), itBit (based in New York), Coinbase, Poloniex and Bittrex.  ABBC White Paper, at 72, 80.  A true and correct copy of ABBC's White Paper is attached hereto as **Exhibit 2**.  Upon information and belief, Defendants' representatives and/or employees have directly targeted U.S. investors by offering to sell ABBC Coins and/or soliciting investment in Defendants' ICOs.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b) & (c).

## FACTUAL BACKGROUND

### I.   Alibaba Group Holding's Trademarks

11.   Alibaba Group Holding is the owner of United States Trademark Reg. No. 2,589,009 which covers the mark "ALIBABA.COM" for use in, among other things "BUSINESS SERVICES, NAMELY FACILITATING THE TRANSACTION OF BUSINESS VIA LOCAL AND GLOBAL COMPUTER NETWORKS . . . ." A true and correct copy of Reg. No. 2,589,009 is attached hereto as **Exhibit 3.** The mark was registered July 2, 2002, and has been in continuous use since that date. It is therefore incontestable pursuant to 15 U.S.C. § 1065, which means that it is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of [Alibaba Group Holding's] ownership of the mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in commerce." *See* 15 U.S.C. § 1115(b).

12.   Alibaba Group Holding is the owner of United States Trademark Reg. No. 2,829,317, which covers the mark "ALIBABA" for use in computer software, including "for use in exchanging information via global computer networks and online from a computer database and the Internet." A true and correct copy of Reg. No. 2,829,317 is attached hereto as **Exhibit 4.** The mark was registered April 6, 2004, and has been in continuous use since that date. It is therefore incontestable pursuant to 15 U.S.C. § 1065, which means that it is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of [Alibaba Group Holding's] ownership of the mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in commerce." *See* 15 U.S.C. § 1115(b).

13.   Alibaba Group Holding is the owner of United States Trademark Reg. No. 2,851,634, which covers the mark "ALIBABA" for use in "computer services, namely, software design and development for others." A true and correct copy of Reg. No. 2,851,634 is attached

hereto as **Exhibit 5**.  The mark was registered June 8, 2004, and has been in continuous use since that date.  It is therefore incontestable pursuant to 15 U.S.C. § 1065, which means that it is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of [Alibaba Group Holding's] ownership of the mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in commerce."  *See* 15 U.S.C. § 1115(b).

14.    Alibaba Group Holding is the owner of United States Trademark Reg. No. 2,579,498, which covers the mark "ALIBABA" for use in, among other things "[m]arket research and business consulting services" and "[p]roviding an interactive web site on a global computer network for third parties to post information, respond to requests and place and fulfill orders for products, services and business opportunities."  A true and correct copy of Reg. No. 2,579,498 is attached hereto as **Exhibit 6.**  The mark was registered June 11, 2002, and has been in continuous use since that date.  It is therefore incontestable pursuant to 15 U.S.C. § 1065, which means that it is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of [Alibaba Group Holding's] ownership of the mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in commerce."  *See* 15 U.S.C. § 1115(b).

15.    Alibaba Group Holding is the owner of United States Trademark Reg. No. 4,820,371, which covers the mark "ALIBABA" for use in media materials, insurance services, transportation services, and education.  A true and correct copy of Reg. No. 4,820,371 is attached hereto as **Exhibit 7**.  The mark was registered September 29, 2015.

16.    Alibaba Group Holding is the owner of United States Trademark Reg. No. 2,809,993, which covers the mark:



for use in connection with computer software. A true and correct copy of Reg. No. 2,809,993 is

attached hereto as **Exhibit 8**. The mark was registered February 3, 2004, and has been in

continuous use since that date. It is therefore incontestable pursuant to 15 U.S.C. § 1065, which

means that it is "conclusive evidence of the validity of the registered mark and of the registration

of the mark, of [Alibaba Group Holding's] ownership of the mark, and of [Alibaba Group

Holding's] exclusive right to use the registered mark in commerce." *See* 15 U.S.C. § 1115(b).

17.     Alibaba Group Holding is the owner of United States Trademark Reg. No.

2,851,633, which covers the mark:



for use in computer services, "namely, software design and development for others." A true and

correct copy of Reg. No. 2,851,633 is attached hereto as **Exhibit 9**. The mark was registered

June 8, 2004, and has been in continuous use since that date. It is therefore incontestable

pursuant to 15 U.S.C. § 1065, which means that it is "conclusive evidence of the validity of the

registered mark and of the registration of the mark, of [Alibaba Group Holding's] ownership of

the mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in

commerce." *See* 15 U.S.C. § 1115(b).

18.     Alibaba Group Holding is the owner of United States Trademark Reg. No.

4,363,019, which covers the mark:



for use in media materials, insurance services, transportation services, and education. A true and correct copy of Reg. No. 4,363,019 is attached hereto as **Exhibit 10**. The mark was registered July 9, 2013.

19.     Alibaba Group Holding is the owner of United States Trademark Reg. No. 4,843,756, which covers the mark:



for use in, among other things "[s]cientific and technological services, namely, research and design in the fields of telecommunications software and hardware design, Internet technology." A true and correct copy of Reg. No. 4,843,756 is attached hereto as **Exhibit 11**. The mark was registered November 3, 2015.

20.     Alibaba Group Holding is the owner of United States Trademark Reg. No. 4,737,751, which covers the mark:



for use in, among other things "[s]cientific and technological services, namely, research and design in the fields of telecommunications software and hardware design, Internet technology." A true and correct copy of Reg. No. 4,737,751 is attached hereto as **Exhibit 12**. The mark was registered May 19, 2015.

21.     Alibaba Group Holding owns common law rights to the trademarks set out in Paragraphs 11-20 through the extensive and continuous use by the Alibaba Group companies of

those marks in New York and other States in the United States (the "Common Law Marks," and together with the registered trademarks set out in Paragraphs 11-20, the "ALIBABA Marks").

22.     Based on the extensive use of the ALIBABA Marks in connection with the many businesses of the Alibaba Group companies, the ALIBABA Marks have taken on secondary meaning among consumers as marks unique to and associated with Alibaba Group Holding and the Alibaba Websites.

23.     Alibaba Group Holding also owns trademarks for variations on the "ALIBABA" name, including:

> a.   United States Trademark Reg. No. 4,033,067 for the mark "ALI-ADVANCE."
>       A true and correct copy of Reg. No. 4,033,067 is attached hereto as **Exhibit 13**.
>       The mark was registered October 4, 2011, and has been in continuous use since
>       that date.  It is therefore incontestable pursuant to 15 U.S.C. § 1065, which
>       means that it is "conclusive evidence of the validity of the registered mark and
>       of the registration of the mark, of [Alibaba Group Holding's] ownership of the
>       mark, and of [Alibaba Group Holding's] exclusive right to use the registered
>       mark in commerce."  See 15 U.S.C. § 1115(b).
>
> b.   United States Trademark Reg. No. 4,263,119 for the mark "ALIPROTECT."
>       A true and correct copy of Reg. No. 4,263,119 is attached hereto as **Exhibit 14**.
>       The mark was registered December 25, 2012, and has been in continuous use
>       since that date.  It is therefore incontestable pursuant to 15 U.S.C. § 1065, which
>       means that it is "conclusive evidence of the validity of the registered mark and
>       of the registration of the mark, of [Alibaba Group Holding's] ownership of the

mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in commerce." See 15 U.S.C. § 1115(b).

c. United States Trademark Reg. No. 4,130,144 for the mark "ALICLOUD." A true and correct copy of Reg. No. 4,130,144 is attached hereto as **Exhibit 15**. The mark was registered April 24, 2012, and has been in continuous use since that date. It is therefore incontestable pursuant to 15 U.S.C. § 1065, which means that it is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of [Alibaba Group Holding's] ownership of the mark, and of [Alibaba Group Holding's] exclusive right to use the registered mark in commerce." See 15 U.S.C. § 1115(b).

d. United States Trademark Reg. No. 4,626,611 for the mark "ALIEXPRESS." A true and correct copy of Reg. No. 4,626,611 is attached hereto as **Exhibit 16**. The mark was registered October 28, 2014.

24.   Alibaba Group Holding has also applied to register trademarks for additional variations on the "ALIBABA" name, including:

a. "ALIBABA MIND SPORTS," a true and correct copy of the application for which is attached hereto as **Exhibit 17**.

b. "ALISPORTS," a true and correct copy of the application for which is attached hereto as **Exhibit 18**.

c. "ALIBABA TRADE MANAGER," a true and correct copy of the application for which is attached hereto as **Exhibit 19**.

d. The mark:



a true and correct copy of the application for which is attached hereto as **Exhibit 20**.

e.   The mark:

阿里巴巴·影业集团
**Alibaba**·Pictures

a true and correct copy of the application for which is attached hereto as **Exhibit 21**.

25.     Alibaba's trademark rights are recognized worldwide.  In addition to the United States, Alibaba Group Holding owns hundreds of registered trademarks for the term "ALIBABA" around the world.

26.     Alibaba Group Holding is the owner of trademarks for the term "ALIBABA" in the European Union:  Registration Nos. 004534319 (NCL 9, 35 (Advertising; business management; business administration; office functions), 38, 42 (Scientific and technological services and research and design relating thereto; industrial analysis and research services; design and development of computer hardware and software)); 009887787 (NCL 16, 35 (Advertising; business management; business administration; office functions), 36 (Insurance; financial affairs; monetary affairs; real estate affairs), 39, 41, 42 (Scientific and technological services and research and design relating thereto; industrial analysis and research services; design and development of computer hardware and software)).

27.     Alibaba Group Holding is the owner of at least four trademarks for the term "ALIBABA" in the United Arab Emirates:  Registration Nos. 72351 (NCL 35 (Advertising;

business management; business administration; office functions)); 072353 (NCL 42 (Scientific and technological services and research and design relating thereto; industrial analysis and research services; design and development of computer hardware and software)); 87225 (NCL 38); 156730 (NCL 41).

28.     Alibaba Group Holding is the owner of numerous trademarks for the term "ALIBABA" throughout the Middle East. *E.g.* Egypt (Registration Nos. 180856, 260113, 180857, 260114, 260115), Iran (Registration Nos. 137641, 190020725), and Saudi Arabia (Registration Nos. 143205704, 142605588, 142605589, 1469/18, 142605590, 142605591).

## II.     Defendants' Infringing Uses Of The ALIBABA Marks

29.     ABBC's website is located at the URL https://www.abbcfoundation.com/ (the "ABBC Website").  The ABBC Website domain name is registered with GoDaddy.com LLC, a Delaware-incorporated limited liability company based in Scottsdale, Arizona.  A true and correct copy of the registrar data for the ABBC Website is attached hereto as **Exhibit 22**.

30.     Per the ABBC Website, "ABBC is a technology optimized for distribution, finance, shopping, security, using blockchain technology." Ex. 1.  Per ABBC's marketing materials, this "blockchain technology" is purportedly still in development. *Id.*  ABBC's White Paper also states that ABBC's "[e]cosystem" is also "an . . . e-learning platform" Ex. 2, at 13.  Defendants have declared that they plan to someday become "the world's leading software platform for digital assets." Ex. 1.

31.     Purportedly to finance the development of their products and services, Defendants have launched at least three initial coin offerings ("ICOs").  An ICO is a financing method used by companies and individuals to raise capital for their businesses and projects.  Attached hereto as **Exhibit 23** is a true and correct copy of a statement from Jay Clatyton, chairman of the Securities

Exchange Commission ("SEC"), wherein Mr. Clatyton states that, "[t]ypically these offerings [(ICOs)] involve the opportunity for individual investors to exchange currency such as U.S. dollars or cryptocurrencies in return for a digital asset labeled as a coin or token." These virtual "coins" or "tokens" are created and disseminated using distributed ledger technology, also known as a blockchain. Attached hereto as **Exhibit 24** is a true and correct copy of a bulletin from the SEC concerning ICOs, which notes that a company or individual using such ICOs ("ICO Promoters") may "tell purchasers that the capital raised from [the ICO] will be used to fund development of a digital platform, software, or other projects and that the virtual tokens or coins may be used to access the platform, use the software, or otherwise participate in the project." *Id.* ICO Promoters "may lead [investors in the ICO] to expect a return on their investment or to participate in a share of the returns provided by the project." *Id.* Once the virtual coins or tokens are issued, "they may be resold to other individuals in a secondary market on virtual currency exchanges or other platforms." *Id.* In light of the potential risks of fraud and manipulation, the SEC and the U.S. Commodities Futures Trading Commission ("CFTC") have issued warnings about the risks of investing in ICOs and cryptocurrencies generally. *See, e.g.*, SEC Release 7678-18 (CFTC Charges Randall Crater, Mark Gillespie, and My Big Coin Pay, Inc. with Fraud and Misappropriation in Ongoing Virtual Currency Scam), a true and correct copy of which is attached hereto as **Exhibit 25**; SEC Customer Advisory: Understand the Risks of Virtual Currency Trading, a true and correct copy of which is attached hereto as **Exhibit 26**.

32.    Per ABBC's ICO Calendar, a true and correct copy of which is attached hereto as **Exhibit 27**, Defendants have completed two rounds of funding through such "ICOs", and are currently running a third one to be completed by July 3, 2018 which is expected to raise over $3,5000,000. During these ICOs, Defendants have represented that the Alibaba Coin value—

initially $2—will "soar gradually" and will reach $50 in August 2018, and $150 in 2019, or a *2425% and 7475% return on investment*, respectively.  Ex. 2, at 72; https://www.facebook.com/ Alibabacoinfoundation/posts/166819453943866.[1]   Further, Defendants have represented that ABBC  will reach a market capitalization of "USD 140 billion" by the end of 2019.  Ex. 2, at 72. Per the ABBC Website, "[a]nyone" can invest in the ICO.  Ex. 1.

33.     As soon as one visits the ABBC Website, the trademarked term "ALIBABA," in whole and without alteration, is the first thing that prominently appears, in the name "ALIBABACOIN:"



34.     "ALIBABA" also appears (with a space between "ALIBABA" and "COIN") in Defendants' logo, which is featured prominently on the ABBC Website:



35.     "ALIBABA" also appears on the ABBC Website in the name of one of the technologies purportedly being offered thereon:

---

[1]   A true and correct copy of the webpage located at this URL is attached hereto as **Exhibit 28**.



36.    "ALIBABA" appears in numerous additional contexts on the ABBC Website.  *See* Ex. 1.

37.    At the URL https://alibabacoinwallet.com/,[2] which is registered to Defendants Philip and ABBC, "ALIBABA" appears alone, in full, and without any alteration:



38.    "ALIBABA" also appears in the URL http://alibabacoinfoundation.com, which is registered to Defendants Philip and ABBC, and which links to the ABBC Website.

39.    "ALIBABA" appears in numerous instances in the page for the "AlibabaCoin Wallet," a phone application being offered through Google.  The application can be obtained at https://play.google.com/store/apps/details?id=com.abbccoin.abbc.  A true and correct copy of the webpage located at that URL is attached hereto as **Exhibit 30**.

---

[2]   A true and correct copy of the webpage located at this URL is attached hereto as **Exhibit 29**.



40.    The "AlibabaCoin Foundation Wallet" can also be obtained through the Apple App Store at https://itunes.apple.com/ph/app/alibabacoin-foundation-wallet/id1348206686?mt=8https://itunes.apple.com/ph/app/alibabacoin-foundation-wallet/id1348206686.   A true and correct copy of the webpage located at that URL is attached hereto as **Exhibit 31**.

41.    "ALIBABA" also appears prominently on various social media channels for ABBC, and at times, in the URLs for those channels, including:

> a.    https://www.facebook.com/Alibabacoinfoundation/.   A true and correct copy of Defendants' Facebook page is attached hereto as **Exhibit 32.**

b. https://twitter.com/abbcfoundation/. A true and correct copy of Defendants' Twitter page is attached hereto as **Exhibit 33.**

c. https://www.youtube.com/channel/UCI2neUIAxnyc0F5dqK5OWvw. A true and correct copy of Defendants' YouTube channel is attached hereto as **Exhibit 33.**

### III. Defendants' Efforts To Mislead Consumers

42. The ABBC White Paper, which is publicly available on the ABBC Website (in English, Chinese, and Arabic), prominently displays the ALIBABA logo and the Alibaba.com trademark, and blatantly asserts that ABBC is affiliated with Alibaba Group Holding: "Alibaba.com enable [sic] businesses to transform the way they market, sell and operate . . . Through **our** subsidiary Cainiao Network and investee affiliate Koubei, respectively, the systemt [sic] participate in the logistics and local services sectors." Ex. 2, at 68 (emphasis added):



Alibaba.com enable businesses to transform the way they market, sell and operate. Alibaba provide the fundamental technology infrastructure and marketing reach to help merchants, brands and other businesses to leverage the power of the Internet to engage with their users and customers. Their businesses are comprised of core commerce, cloud computing, digital media and entertainment, innovation initiatives and others. Through our subsidiary Cainiao Network and investee affiliate Koubei, respectively, the systemt participate in the logistics and local services sectors. In addition, they have a strategic relationship with Ant Financial Services, the financial services group that operates mainly through Alipay, the leading third-party online payment platform in China.

43. The White Paper furthers the likelihood of consumer confusion by noting that the cryptocurrency Defendants are offering is known as both "AlibabaCoin" and also as "Alibaba Coin." Ex. 2, at 43. The space between Alibaba Group Holding's trademark "Alibaba" and the

word "Coin" further reduces the already low probability that consumers might believe the product is not associated with Alibaba Group Holding.

44.     ABBC's Facebook page includes an image that calls deliberate attention to the ALIBABA Marks contained therein, to the exclusion of the marks of other online retailers:



45.     In an "interview" with Defendant Philip dated February 22, 2018 (a true and correct copy of which is attached hereto as **Exhibit 35**), Mr. Philip publicly refused to refute the Defendants' association with Alibaba, and then stated that they would be "run[ning]" online-shopping platforms that would accept their crypto-currency—thus further associating themselves with Alibaba's core businesses:

> "**Q: Is your coin connected or related to the Alibaba of China?**
>
> [Jason Daniel Paul Philip, founder of ABBC]: … **I cannot tell you anything about this for now**, but one thing for sure is that our solution will be used in many online platforms that require asset securement of crypto-currencies.  **We are planning to run online-shopping platforms as well as a crypto exchange platform as well** [sic]."

(at 3) (emphases added).

46.     Upon information and belief, Defendants have published or caused the publication of articles online about ABBC that contain ALIBABA Marks, including images of Alibaba's headquarters prominently displaying Alibaba's name as well as images of Alibaba's co-founder, Mr. Jack Ma.  True and correct copies of those webpages and corresponding translations are attached hereto as **Exhibit 36-38**.

## IV.   Actual Confusion Has Already Occurred

47.     Defendants' prominent, repeated, and intentionally misleading uses of the ALIBABA Marks are designed to cause consumers to believe erroneously that Alibaba Group Holding is the source of ABBC's services and products, or that such services and products are endorsed by, sponsored by, or otherwise associated or affiliated with Alibaba Group Holding.

48.     News outlets have already begun asking whether that is the case, evidencing that actual confusion is already occurring.  *See, e.g.*, "AlibabaCoin, Revealed To The World Of Crypto", Digital Journal, January 30, 2018, available at http://www.digitaljournal.com/pr/3639605 ("Is this new AlibabaCoin made by the great Chinese Alibaba?").  A true and correct copy of the article is attached hereto as **Exhibit 39**.

49.     The confusion has also spread throughout the financial and technology press, where reporters have confused ABBC's crypto coin with Alibaba.  *See e.g.* Oindrila Banerjee, "AlibabaCoin (ABBC) Foundation working on making cryptocurrency user friendly", TechGenYZ,       February       22,       2018,       available       at https://www.techgenyz.com/2018/02/22/alibabacoin-abbc-foundation-cryptocurrency/  ("As of now, [ABBC] is recruiting funds to attract new developers, new personnel, and build a bigger platform.  The **Alibaba Coin ICO** shall remain open until the first quarter of the year.  **Alibaba**'s decentralized Blockchain-based coins in X13 format can be mined using POW and POS mining

structures.  They have already published 1.5 billion coins and intends to distribute 500 million

coins each via pre-sales and ICO.") (emphases added).  A true and correct copy of the article is

attached hereto as **Exhibit 40**.

50.     Defendants have done nothing to combat or correct this confusion, and indeed,

appear to have stoked it whenever possible, even using the terms "ABBC" and "Alibaba"

interchangeably.  *See, e.g.*, "AlibabaCoin ICO (ABBC Coin): Legit Blockchain Crypto Coin?",

BitcoinExchangeGuide,        March        26,        2018,        available        at

https://bitcoinexchangeguide.com/alibabacoin-abbc-ico/    ("Alibabacoin,    or    ABBC,    is

a cryptocurrency business **approach by the global retailer and wholesaler Alibaba**.  It describes

its  new  technology  as  optimized  for  finance,  distribution,  shopping,  and  security  using

the blockchain technology.  **According to the CEO, Alibaba sees a better and more secure**

**future with valuable blockchain solutions, hence AlibabaCoin**.  The blockchain platform that

AlibabaCoin is built on promises to be the one blockchain technology that will emerge as the

leading platform for digital assets in the world.").  A true and correct copy of the article is attached

hereto as **Exhibit 41**.

51.     ABBC has publicly indicated that it plans to move into e-commerce, by launching

"an **online shopping website** where people can use not only Alibabacoin but other cryptocoins as

well."  "Alibaba's Public ICO Brings an Explosive Response", CryptoNews, March 21, 2018,

available  at  https://www.crypto-news.net/alibabacoins-public-ico-brings-an-explosive-reponse/

(emphasis added); *see also* https://www.abbcfoundation.com/ ("Alibabacoin Foundation is

currently preparing an **online shopping** and a crypto exchange business that will combine all

platforms and enable them to use a more facilitated payment structure and a more safe method to

keep and distribute cryptos.") (emphasis added).  A true and correct copy of the CryptoNews

article is attached hereto as **Exhibit 42**.  Given that e-commerce is the core business of the Alibaba Websites, and the primary (though not the only) business associated with the ALIBABA Marks, this raises the likelihood of consumer confusion exponentially.

### V.    Alibaba Group Holding Has Suffered And Will Continue To Suffer Harm

52.    Defendants' activities with respect to the ALIBABA Marks have resulted in, are resulting in, and will continue to result in harm to Alibaba Group Holding, including without limitation damage to Alibaba Group Holding's reputation and goodwill symbolized by the ALIBABA Marks, as well as monetary losses and damage.

53.    Earlier this year, reports circulated that Alibaba Group Holding was planning to launch its own cryptocurrency.  *See, e.g.*, Josiah Wilmoth, "China's Alibaba Quietly Launches Cryptocurrency Mining Platform: Unconfirmed Local Report", CCN, January 16, 2018, available at  https://www.ccn.com/alibaba-quietly-launches-cryptocurrency-mining-platform-unconfirmed-local-report/ ("Chinese e-commerce and tech conglomerate Alibaba has quietly launched a cryptocurrency mining platform, according to an unconfirmed local media report").  A true and correct copy of the article is attached hereto as **Exhibit 43**.

54.    Alibaba has repeatedly stated that it is not interested in moving into the cryptocurrency space.  *See e.g.,*  Wolfie Zhao, "Alibaba Payment Affiliate Rules Out ICO Fundraising", Coindesk, March 26, 2018, available at  https://www.coindesk.com/alibabas-payment-affiliate-rules-out-prospect-of-ico/ ("Ant Financial Services Group, Alibaba's payment affiliate and operator of AliPay, has taken a critical stance over initial coin offerings (ICOs).") (A true and correct copy of the article is attached hereto as **Exhibit 44)**; James Levenson, "Alibaba Dispels Cryptocurrency Platform Rumors, Bitcoinist, January 18, 2018, available at  http://bitcoinist.com/alibaba-opens-crypto/ ("NO **ALIBABA COIN**: Alibaba chief Jack Ma has

been standoffish towards the crypto space, stating that the world was not ready for it last year.")
(A true and correct copy of the article is attached hereto as **Exhibit 45**).

55.     But on the exact same day the earlier of these reports was released, January 18,
2018, Defendants Philip and ABBC began registering infringing web domain names—including
alibabacoinfoundation.com and aliababcoinwallet.com—using the very term that appeared in the
press report on Plaintiff's views on cryptocurrencies:   ALIBABACOIN.   Defendants have
registered these domain names with GoDaddy.com LLC, a Delaware-incorporated limited liability
company based in Scottsdale, Arizona. *See* Ex. 22.

56.     Defendants' statements and actions are designed to make consumers believe that
Alibaba is the source of ABBC's products and services, or that such products and services are
endorsed or sponsored by, or otherwise associated or affiliated with, Alibaba, even though Alibaba
has repeatedly and publicly asserted it will not enter the cryptocurrency space at this time.

57.     If any problems occur with Defendants or with any of the products or services they
provide (or intend to provide), consumers would associate those problems with the ALIBABA
Marks and, by extension, with Alibaba Group Holding, thus harming the goodwill that Alibaba
has developed in the ALIBABA Marks and damaging Alibaba Group Holding.

58.     Further, Defendants' unauthorized use of the ALIBABA Marks is likely to impair
and damage the distinctiveness of the ALIBABA Marks by causing the public to no longer
associate the ALIBABA Marks exclusively with Alibaba Group Holding.

## FIRST CAUSE OF ACTION
Federal Trademark Infringement In Violation Of 15 U.S.C. § 1114
(Against All Defendants)

59.     Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as
if fully set forth herein.

60.     Alibaba Group Holding owns the ALIBABA Marks, including incontestable federal trademarks. *See* **Exs. 3-16**.

61.     Defendants have both actual and constructive knowledge of the ALIBABA Marks.

62.     Defendants have used, are using, and have caused others to use the ALIBABA Marks, and marks confusingly similar thereto, in connection with the advertising, promotion, and sale of their products and services without Alibaba Group Holding's authorization.

63.     These uses of the ALIBABA Marks have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Alibaba, in violation of 15 U.S.C. § 1114.

64.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Alibaba and the ALIBABA Marks, and to deceive consumers into believing that Alibaba is the source of Defendants' products and services, or that such products and services are endorsed by, sponsored by, or otherwise associated or affiliated with Alibaba.

65.     As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

66.     Defendants' unlawful conduct has caused Alibaba Group Holding to lose control over the goodwill it has established in the ALIBABA Marks and to irreparably injure Alibaba Group Holding's business, reputation, and goodwill.  Unless Defendants are enjoined from their unlawful conduct, Alibaba Group Holding will continue to suffer irreparable harm for which it has no adequate remedy at law.

## SECOND CAUSE OF ACTION

Federal Trademark Infringement, Unfair Competition, And False Designation Of Origin In
Violation Of 15 U.S.C. § 1125
(Against All Defendants)

67.     Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68.     Alibaba Group Holding owns the ALIBABA Marks.

69.     Defendants have used, are using, and have caused others to use the ALIBABA Marks in connection with the advertising, promotion, and sale of their products and services without Alibaba Group Holding's authorization.

70.     These uses of the ALIBABA Marks have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Alibaba, in violation of 15 U.S.C. § 1125.

71.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Alibaba and the ALIBABA Marks, and to deceive consumers into believing that Alibaba is the source of Defendants' products and services, or that such products and services are endorsed by, sponsored by, or otherwise associated or affiliated with Alibaba.

72.     As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

73.     Defendants' unlawful conduct has caused Alibaba Group Holding to lose control over the goodwill it has established in the ALIBABA Marks and to irreparably injure Alibaba Group Holding's business, reputation, and goodwill.  Unless Defendants are enjoined from their

unlawful conduct, Alibaba Group Holding will continue to suffer irreparable harm for which it has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### Federal False Advertising In Violation Of 15 U.S.C. § 1125
### (Against All Defendants)

74. Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

75. Defendants are distributing, have distributed, and caused others to distribute materials that misrepresent that Defendants' uses of the ALIBABA Marks are authorized, licensed, or sponsored by Alibaba when in fact they are not.

76. Defendants' false or misleading statements misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities, and have deceived and are likely to deceive the public and the trade in violation of 15 U.S.C. § 1125.

77. Defendants' unlawful conduct was and is knowing, willful, deliberate, and in bad faith because Defendants knew at the time the statements were made that they were false or misleading statements and made the statements in order to increase the sales of their products and/or services, and the revenues from their ICOs.

78. As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

79. Unless Defendants are permanently enjoined from their unlawful conduct, Alibaba Group Holding will continue to suffer irreparable injury for which it has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
Federal Trademark Dilution In Violation Of 15 U.S.C. § 1125(c)
(Against All Defendants)

80.    Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

81.    Alibaba Group Holding owns the ALIBABA Marks.

82.    The ALIBABA Marks are widely recognized by the general consuming public and are famous and became famous before Defendants commenced their unlawful uses of the ALIBABA Marks.

83.    Defendants have used, are using, and have caused others to use the ALIBABA Marks, and substantially similar marks, in commerce in connection with the advertising, promotion, and sale of their products and services, without Alibaba Group Holding's authorization.

84.    Defendants' uses of the ALIBABA Marks, and substantially similar marks, are likely to impair and damage the distinctiveness of the ALIBABA Marks by causing the public to no longer associate the ALIBABA Marks exclusively with Alibaba.  Defendants' uses are also likely to tarnish the reputation of Alibaba and the goodwill it has developed in the Alibaba Marks.

85.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Alibaba Group Holding and the ALIBABA Marks, and to deceive consumers into believing that Alibaba is the source of Defendants' products and services, or that such products and services are endorsed by, sponsored by, or otherwise associated or affiliated with Alibaba.

86.    As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

87.     Unless Defendants are permanently enjoined from their wrongful conduct, Alibaba Group Holding will continue to suffer irreparable injury for which it has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
Trademark Infringement, Unfair Competition, And False Designation Of Origin Under New York Law
(Against All Defendants)

88.     Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

89.     Alibaba Group Holding owns common law rights in its trademarks (the "Common Law Marks") through the extensive and continuous use of those marks in New York and other States in the United States.

90.     Defendants have had both actual and constructive knowledge of Alibaba Group Holding's superior rights in the Common Law Marks.

91.     Defendants have used, are using, and have caused others to use the Common Law Marks in connection with the advertising, promotion, and sale of their products and services without Alibaba Group Holding's authorization.

92.     Through Defendants' unauthorized use, Defendants unfairly appropriated or exploited the special qualities associated with the Common Law Marks, resulting in the misappropriation of a commercial advantage belonging to Alibaba Group Holding.

93.     Defendants' unauthorized use of the Common Law Marks has caused and is likely to cause confusion, mistake, and deception as to their affiliation, connection, or association with, or sponsorship or approval by, Alibaba, in violation of New York law.

94.     Defendants' unauthorized use of the Common Law Marks has caused and is likely to cause confusion, mistake, and deception as to whether Alibaba is the source of Defendants'

products and services, or whether such products and services are endorsed or sponsored by, or otherwise associated or affiliated with, Alibaba, in violation of New York law.

95.     As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

96.     Unless Defendants are permanently enjoined from their wrongful conduct, Alibaba Group Holding will continue to suffer irreparable injury for which it has no adequate remedy at law.

### SIXTH CAUSE OF ACTION
False Advertising And Unfair Competition Under New York Law
(Against All Defendants)

97.     Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

98.     Defendants are distributing, have distributed, and have caused others to distribute materials that misrepresent that Defendants' uses of the Common Law Marks are authorized, licensed, or sponsored by Alibaba when in fact they are not.

99.     Defendants' false or misleading statements misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities and have deceived and are likely to deceive the public and the trade in violation of New York law.

100.    Defendants' unlawful conduct was and is knowing, willful, deliberate, and in bad faith because Defendants knew at the time the statements were made that they were false and made the statements in order to increase the sales of their products and/or services, and the revenues from their ICO(s).

101.   As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

102.   Unless Defendants are permanently enjoined from their unlawful conduct, Alibaba Group Holding will continue to suffer irreparable injury for which it has no adequate remedy at law.

**SEVENTH CAUSE OF ACTION**
Trademark Dilution in Violation of N.Y. Gen. Bus. Law § 360-l
(Against All Defendants)

103.   Alibaba Group Holding repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

104.   Alibaba Group Holding owns the ALIBABA Marks.

105.   Defendants have used, are using, and have caused others to use the ALIBABA Marks without Alibaba Group Holding's authorization.

106.   Defendants' unauthorized uses of the ALIBABA Marks have impaired and damaged and are likely to impair and damage the distinctiveness of the ALIBABA Marks by causing the public to no longer associate the ALIBABA Marks exclusively with Alibaba Group Holding.  Defendants' uses are also likely to tarnish the reputation of Alibaba and the goodwill it has developed in the Alibaba Marks.

107.   Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Alibaba Group Holding and the ALIBABA Marks, to impair the distinctiveness of the ALIBABA Marks, and to deceive consumers into believing that Alibaba is connected with Defendants' products and services.

108.    As a result of Defendants' unlawful conduct, Alibaba Group Holding has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

109.    Unless Defendants are permanently enjoined from their wrongful conduct, Alibaba Group Holding will continue to suffer irreparable injury for which it has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Alibaba Group Holding prays for judgment and relief as follows:

A.  That this Court enter judgment in favor of Alibaba Group Holding and against Defendants, jointly and severally, on all counts alleged herein;

B.  That this Court issue a permanent injunction that:

    i.  Enjoins Defendants from using the ALIBABA Marks, alone or in combination with any word(s), term(s), designation(s), marks(s), or design(s), as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of the ALIBABA Marks anywhere in the United States, including in connection with the provision of products or services to internet users located in the United States, and enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action from enabling or assisting Defendants in such uses;

  ii. Enjoins Defendants from making false or misleading statements concerning the ALIBABA Marks in the sale, advertising, or promotion of Defendants' goods and services to any parties located in the United States, alone or in combination with any word(s), term(s), designation(s), marks(s), or design(s), as well as any mark, image, or depiction that is confusingly similar or likely to impair the ALIBABA Marks, and enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action from making or assisting Defendants in making such statements;

  iii. Requires Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action to engage in corrective advertising in a form pre-approved by Alibaba Group Holding and the Court to dispel the confusion caused by Defendants' unlawful conduct; and

  iv. Requires Defendants to file with the Court and serve on Alibaba Group Holding, within thirty (30) days after entry of such an injunction, a report in writing under oath setting forth in detail the manner in which Defendants have complied with such an injunction;

C. That this Court grant monetary relief in the form of:

     i.     Compensatory damages under 15 U.S.C. § 1117 and New York law for all injuries to Alibaba Group Holding caused by Defendants' acts alleged herein;

     ii.    An accounting of Defendants' profits derived by Defendants' acts alleged herein under 15 U.S.C. § 1117 and New York law and said accounting trebled;

     iii.   Punitive damages under New York law;

     iv.   Enhanced or treble damages under 15 U.S.C. § 1117 and New York law;

     v.    Attorneys' fees and costs under 15 U.S.C. § 1117 and New York law;

     vi.   Prejudgment and post-judgment interest; and

D.  That this Court permit the service of the Complaint, associated motion papers, and any Court order upon Defendants and their legal representatives by email and FedEx pursuant to Federal Rule of Civil Procedure 4(f)(3);

E.  That this Court grant such other and further relief as it deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Alibaba Group Holding respectfully demands a jury trial on all claims and issues so triable.

DATED:   New York, New York
             April 2, 2018

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

By: _LB Carey Ramos_

   Carey R. Ramos
     careyramos@quinnemanuel.com
   Lucas V.M. Bento
     lucasbento@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

*Attorneys for Plaintiff Alibaba Group Holding*
*   Limited*