UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――――
ALIBABA GROUP HOLDING
LIMITED,
                           Plaintiff,

                -v-

ALIBABACOIN FOUNDATION, et al.,
                           Defendants.
―――――――――――――――――――――――――――――――――

18-CV-2897 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Alibaba Group Holding Limited ("Alibaba") brings this suit against Alibabacoin Foundation, Alibabacoin Block Chain IT Solutions LLC, Alibabacoin General Trading FZE, Alibabacoin Foundation LLC, Jason Daniel Paul Philip, and Hasan Abbas (collectively, "Alibabacoin"), asserting federal and state claims for trademark infringement, unfair competition, false advertising, false designation of origin, and trademark dilution.

      Alibaba moved for a temporary restraining order and preliminary injunction. On April 3, 2018, the Court temporarily restrained Alibabacoin from using, or making false or misleading statements concerning, Alibaba's marks or any other trademarks likely to be confusingly similar to or to impair the distinctiveness of Alibaba's marks. (Dkt. No. 10.) The Court also ordered Alibabacoin to show cause why it should not be preliminarily enjoined from undertaking the same actions. On April 13, 2018, the Court held a hearing on Alibaba's application for a preliminary injunction. The temporary restraining order was extended through April 30, 2018. (Dkt. No. 52.)

      For the reasons that follow, Alibaba's motion for a preliminary injunction is denied without prejudice to renewal upon an adequate showing of personal jurisdiction.

1

**I.     Background**

Alibaba is a Cayman Islands company with its principal place of business in China. (Dkt. No. 1 ("Compl.") ¶ 2.) Alibaba is the parent company of "the largest online and mobile commerce group of businesses in the world." (Dkt. No. 19 ¶ 3.) In 2014, Alibaba set a world record for the most valuable initial public offering in history, and it is now the largest retail platform in the world. (Dkt. No. 19 ¶ 3; Dkt. No. 36-3 at 3.) Alibaba owns numerous registered federal trademarks for the mark "ALIBABA" (and other related marks containing the word "Alibaba") for various uses related to computer and internet services. (Compl. ¶¶ 12–19, 20.)

Alibabacoin is the creator of a cryptocurrency. (Dkt. No 29-4 at 4.)[1] Alibabacoin has completed two "initial coin offerings," and is currently running a third, which it expects will raise over $3,5000,000. (Dkt. No. 18 ¶ 17.) Alibabacoin maintains a website ("the Alibabacoin website") at the URL https://www.abbcfoundation.com/, from which internet users can access marketing materials including a "white paper" describing Alibabacoin's vision for the future implementation of the Alibabacoin system. (Compl. ¶ 29–30; Dkt. No. 1-2.) For example, the white paper explains that "[t]he Alibabacoin Foundation will allow users to shop online by using their [Alibabacoin] wallet." (Dkt. No. 1-2 at 7.) Alibabacoin also maintains a website at the URL alibabacoinwallet.com ("the Wallet website") (Compl. ¶ 37), and offers phone applications

---

[1]     "[C]ryptocurrencies purport to be items of inherent value . . . that are designed to enable purchases, sales and other financial transactions." (Dkt. No. 1-23 at 3.) Generally speaking, cryptocurrency coins or tokens are created and disseminated using distributed ledger or blockchain technology. (Dkt. No. 1-24 at 1.) Blockchain uses cryptography to process and verify transactions: it is essentially "an electronic distributed ledger . . . that is maintained by various participants in a network of computers." (*Id.*) Cryptocurrency coins or tokens are often sold in "initial coin offerings" ("ICOs"), in which purchasers may use fiat money or virtual currency to buy cryptocurrency coins or tokens. (*Id.*) ICOs are generally used by the companies marketing cryptocurrencies as a way to raise capital from investors. (*Id.*)

through Google and the Apple App Store, respectively named "AlibabaCoin Wallet" and "Alibaba Coin Foundation Wallet" (Compl. ¶ 39–40.)

The trademarked term "Alibaba" appears on the Alibabacoin website (Dkt. No. 18-11.), on the "Alibaba Coin Foundation" Facebook Page (Dkt. No. 1-28), on the Wallet website (Dkt. No. 1-29), and on the Alibabacoin website (Compl. ¶ 38.)  The two apps also display the trademarked term "Alibaba."  (Dkt. No. 1-30; Dkt. No. 1-31.)

## II.     Legal Standard

"[A] plaintiff seeking a preliminary injunction must show (1) 'a likelihood of success on the merits' or 'sufficiently serious questions going to the merits to make them a fair ground for litigation'; (2) 'that he is likely to suffer irreparable injury in the absence of an injunction'; (3) that 'the remedies available at law, such as monetary damages, are inadequate to compensate for that injury'; (4) that, 'considering the balance of hardships between the plaintiff and defendant,' a remedy in equity is warranted; and (5) that 'the public interest would not be disserved by the issuance of a permanent injunction." *Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, No. 17 Civ. 6513, 2018 WL 1684413, at *2 (S.D.N.Y. Mar. 6, 2018) (brackets omitted) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).  "Although the holding in *Salinger* was explicitly 'limited to preliminary injunctions in the context of copyright cases,'" there is "no principled reason not to adopt the *Salinger* standard in the trademark context."  *Id.* (alterations omitted) (quoting *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011)).

A district court is "powerless to proceed" on a motion for preliminary injunction "in the absence of personal jurisdiction." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 611 (S.D.N.Y. 2016) (quoting *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 24 (D.D.C. 2012)).  "In order to obtain a preliminary injunction, a plaintiff must make more than a 'prima

facie showing of jurisdiction,'" and must instead demonstrate 'a reasonable probability of ultimate success' on the issue of personal jurisdiction." *NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14 Civ. 3945, 2014 WL 2619588, at *3 (S.D.N.Y. June 11, 2014) (quoting *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990)).

### III.   Discussion

Alibabacoin contends that a preliminary injunction is not warranted because: (1) Alibaba has not established subject matter jurisdiction under the Lanham Act; (2) Plaintiffs have failed to establish personal jurisdiction; and (3) Plaintiffs have failed to establish likelihood of success on the merits.  (Dkt. No. 37 at 8, 13.)

#### A.   Subject Matter Jurisdiction

Alibabacoin first argues that the Court lacks subject matter jurisdiction under the Lanham Act because Alibaba has not established that Alibabacoin ever made "use in commerce" of Alibaba's trademarks.  (Dkt. No. 37 at 13.)  According to Alibabacoin, no use in commerce has occurred at this point because it has yet to sell any Alibabacoins.

The Court concludes that it has federal question jurisdiction pursuant to 28 U.S.C. § 1338 because this case arises under the Lanham Act, 15 U.S.C. § 1125(a).  First, "the 'use in commerce' element of [15 U.S.C. § 1125(a)] is not a jurisdictional requirement." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 872 (9th Cir. 2014); *see also Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) ("[A] complaint *fails to state a claim* under the Lanham Act unless it alleges that the defendant has made 'use in commerce' of the plaintiff's trademark") (emphasis added); *Sit N' Stay Pet Servs., Inc. v. Hoffman*, No. 17 Civ. 116, 2017 WL 3866026, at *4 (W.D.N.Y. Sept. 5, 2017) ("'[I]n commerce' is not a jurisdictional element of the Lanham Act.").

4

Second, Alibaba has adequately established that Alibaba used its trademarks "in commerce." Section 1127 provides:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—
>
> > (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> >
> > (B) the goods are sold or transported in commerce, and
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

18 U.S.C. § 1127.

Alibabacoin argues that it has not yet sold any "coin on crypto-asset trading platforms." (Dkt. No. 37 at 13.) But Alibabacoin fails to explain why its three initial coin offerings do not constitute the sale in commerce of a "good" bearing Alibaba's trademark.

Accordingly, subject matter jurisdiction is proper over Alibaba's claims.

### B. Personal Jurisdiction

Alibabacoin fares better on its personal jurisdiction argument. Because "personal jurisdiction in federal court is determined by the laws of the forum state," courts must perform a two-part jurisdictional analysis. *Siegel v. Ford*, No. 16 Civ. 8077, 2017 WL 4119654, at *4 (S.D.N.Y. Sept. 15, 2017) (quoting *Machkour v. Espices W. 70th Corp.*, No. 11 Civ. 688, 2011 WL 6288006, at *3 (S.D.N.Y. Dec. 14, 2011)). "First, the court determines whether there is

jurisdiction over the defendant under the relevant forum state's laws—in this case, N.Y. C.P.L.R. § 302(a)." *Grand v. Schwarz*, No. 15 Civ. 8779, 2016 WL 2733133, at *2 (S.D.N.Y. May 10, 2016). Second, the court must ensure that its exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. *See id.*

Alibaba contends that Alibabacoin is subject to specific personal jurisdiction[2] under Section 302(a)(1) of New York's long-arm statute. (Dkt. No. 17 at 9.) "Under C.P.L.R. § 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) defendant 'transacts any business within the state'; and (2) the 'cause of action arises from' that business transaction." *Grand*, 2016 WL 2733133, at *3 (alterations omitted) (quoting N.Y. C.P.L.R. § 302(a)(1)).

As to the first element, a nonresident defendant "'transacts business' in New York when she 'purposefully avails herself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "Whether a defendant engaged in purposeful activity within New York depends on the totality of the circumstances." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 825482, at *9 (S.D.N.Y. Mar. 2, 2017) (quoting *Universal Grading Serv. v. eBay, Inc.*, No. 08 Civ. 3557, 2009 WL 2029796, at *6 (E.D.N.Y. June 10, 2009)).

Alibaba offers several arguments that Alibabacoin has transacted business in New York (Dkt. No. 17 at 9), but only two merit significant discussion. First, Alibaba contends that Alibabacoin's operation of a "highly interactive website," which is accessible to New York

---

[2] Alibaba does not contend that Alibabacoin is subject to general personal jurisdiction in New York.

6

residents, constitutes transaction of business in the forum.  (*Id.*)  It is well established that a defendant's operation of a website can support personal jurisdiction under § 302(a).  *See M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 7 Civ. 7371, 2008 WL 2696168, at *5 (S.D.N.Y. July 7, 2008).  To determine whether jurisdiction is proper, courts must place the website on a "spectrum of interactivity":

> At one end are 'passive'" websites—i.e., those that merely make information available to viewers.  Such websites have 'been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant.'  At the other end of the spectrum are 'interactive' websites—i.e., those that knowingly transmit goods or services to users in other states.  Where an 'interactive' website is not only available but also purposefully directs activity into a forum state—for example, by making sales of goods or services to New York residents—those activities can be sufficient to trigger jurisdiction under section 302(a)(1). Finally, 'occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction.'

*Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418–19 (S.D.N.Y. 2009) (internal citations omitted) (first and third quoting *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y. 2000); second quoting *Mattel, Inc. v. Adventure Apparel*, No. 00 Civ. 4085, 2001 WL 286728, at *2–3, (S.D.N.Y. Mar. 22, 2001).).

Here, Alibabacoin's websites are highly interactive and have "significant commercial elements."  *Seldon v. Magedson*, No. 11 Civ. 6218, 2012 WL 4475274, at *9 (S.D.N.Y. July 10, 2012) ("Interactive websites with significant commercial elements are generally found sufficient to constitute in-state transaction of business. . . .")  Through the Alibabacoin website and the Wallet website, individuals can (1) register an online account, or "wallet," to buy, manage, and sell their Alibabacoin; (2) access and download content about Alibabacoin's cryptocurrency, including the white paper; and (3) interact with and contact sales representatives with questions.

(Dkt. No. 49 at 6; Dkt. No. 22 at 1–2.)  In light of this functionality, these two websites are sufficiently interactive to support personal jurisdiction.  *See, e.g.*, *Cigar500.com*, 2008 WL 2696168, at *5.

Nonetheless, Alibaba's cannot base jurisdiction on Alibabacoin's interactive websites because Alibaba has not established a reasonable probability that these websites have been "actually used to effect commercial transactions with customers in New York."  *Id.*  "Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York."  *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006) (quoting *Savage Universal Corp. v. Grazier Constr., Inc.*, No. 4 Civ. 1089, 2004 WL 1824102, *9  (S.D.N.Y. Aug. 13, 2004)); *see also Virgin Enterprises Ltd. v. Virgin Eyes LAC*, No. 08 Civ. 8564, 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) ("Because no business transactions supplemented the advertisements on Defendant's website, § 302(a)(1) cannot confer personal jurisdiction."); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 622 n.3 (S.D.N.Y. 2013); *Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 420 (E.D.N.Y. 2017).  "It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred."  *Savage Universal*, 2004 WL 1824102, at *9.

"Section 302(a)(1) is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction."  *Grand*, 2016 WL 2733133, at *2–3 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988)).  But Alibaba has not alleged that even a

8

single sale of Alibabacoin has occurred in New York, much less presented sufficient proof of commercial activity to justify a preliminary injunction. Alibaba's evidence that the majority of visitors to the Alibabacoin website are based in the *United States* is insufficient, without more, to establish a reasonable probability that at least one New York sale has occurred.[3]

Alibaba also argues that personal jurisdiction is proper because Alibabacoin contracted with DigitalOcean LLC, a company headquartered in New York City, to host the Wallet website. (Dkt. No. 49 at 4.) Alibabacoin responds that any contacts it had with Digital Ocean fail at the second step of the § 302(a)(1) analysis because those contacts lack an articulable nexus to Alibaba's claims. (Dkt. No. 37 at 23.)

Business transactions in New York do not give rise to personal jurisdiction under § 302(a)(1) unless the cause of action "'arise[s] from" those transactions. N.Y. C.P.L.R. § 302(a). "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Royalty Network*, 638 F. Supp. 2d at 422 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). "By contrast, 'a connection that is merely coincidental is insufficient to support jurisdiction.'" *Id.* (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103–04 (2d Cir. 2006)). "This inquiry is 'relatively permissive,' and does not require causation, but merely 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of

---

[3] The Court also rejects Alibaba's alternative argument that personal jurisdiction over Defendants is proper under Federal Rule of Civil Procedure 4(k)(2). (Dkt. No. 49 at 6–7.) To trigger Rule 4(k)(2), a defendant "must not be 'subject to jurisdiction in any state's courts of general jurisdiction.'" *NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14 Civ. 3945, 2014 WL 2619588, at *6 (S.D.N.Y. June 11, 2014) (quoting Fed. R. Civ. P. 4(k)(2). Even if Alibabacoin is not subject to jurisdiction in New York, Alibaba has provided no evidence that Alibabacoin is similarly not subject to jurisdiction in each of the other 49 states.

the ultimate merits of the claim.'" *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 329, 68 N.E.3d 1, 11 (2016) (internal citations omitted) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 328 (2012)). An articulable nexus exists where the claim is "in some way arguably connected to the transaction." *Id.* (quoting *Licci*, 20 N.Y.3d at 340).

The Court concludes that Alibaba has not shown a "reasonable probability" of establishing personal jurisdiction based on the fact that a New York company hosts Alibabacoin's website. Alibaba fails to cite a single case in which a court has concluded that an agreement with a third-party web-hosting company in New York bears an articulable nexus to a trademark infringement claim involving a website. Even if Alibabacoin's websites were hosted in New York, that alone is insufficient to establish personal jurisdiction. *See Philpot v. Kos Media LLC*, No. 16 Civ. 1523, 2017 WL 2270248, at *11 (S.D.N.Y. Apr. 21, 2017) ("[T]he use of New York servers by defendant's web hosting vendor is 'merely coincidental,' and 'of no relevance to the facts or legal issues underlying this suit,' which concern the content of the website, not its architecture.") (first quoting *Sole Resort*, 450 F.3d at 103, second quoting *Royalty Network*, 638 F. Supp. 2d at 422), *report and recommendation adopted*, 2017 WL 2269531 (S.D.N.Y. May 23, 2017)); *see also BGDG Enterprises, LLC v. Barley & Swine*, No. A-13 CA. 719, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014) (noting that no court has held that facts about "the servers hosting . . . websites and these servers' physical locations" were relevant to personal jurisdiction analysis); *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332, 337 (D.N.J. 2000) ([D]efendants' only possible connection to New Jersey is a "host server" . . . . It is unreasonable that by utilizing a New Jersey server, defendants' should have foreseen being haled into a New Jersey federal court.")

Perhaps there are additional facts about Alibabacoin's relationship with Digital Ocean that would strengthen the nexus between their hosting agreement and Alibaba's claims. *See Do The Hustle, LLC. v. Rogovich*, No. 03 Civ. 3870, 2003 WL 21436215, at *6 (S.D.N.Y. June 19, 2003) (outlining relevant factors); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 401–02 (4th Cir. 2003) (describing the significance of the location of web server within a forum as "de minimis," but noting that jurisdiction could exist if an in-state individual had an *active role* in maintenance of defendant's site). Alibaba, however, has failed to allege that DigitalOcean had any sort of active role in administering Alibabacoin's site, nor has Alibaba alleged any other facts to strengthen the nexus between its claims and DigitalOcean's hosting of the website.[4] At this point, Alibaba has failed to meet its burden to establish that personal jurisdiction is proper by virtue of Alibabacoin's hosting agreement with DigitalOcean.

The Court briefly addresses Alibaba's other jurisdictional arguments under § 302(a)(1), which also fail to establish personal jurisdiction. First, Alibaba points to the fact that Alibabacoin plans to list its cryptocurrency on exchanges in the United States, including in New

---

[4] Alibaba relies exclusively on the fact that Digital Ocean is headquartered in New York. The Court notes that this fact alone is insufficient to establish that the Wallet website is even hosted on servers located in New York, especially given that Digital Ocean has "data center regions throughout the world." (Dkt. No. 22-2 at 2) The question whether Alibabacoin's Wallet website is actually hosted on servers physically located in New York may also be relevant to the personal jurisdiction inquiry. *Rogovich*, 2003 WL 21436215, at *6.

In its application for a preliminary injunction, Alibaba does not rely on § 302(a)(2), which provides for personal jurisdiction over a defendant who "commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2). Alibaba's Lanham Act claims sound in tort. *See Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 622 (S.D.N.Y. 2013). When infringement occurs on a website, "the tort is deemed to be committed where the website is created and/or maintained." *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153, 2014 WL 496875, at *11 (S.D.N.Y. Feb. 5, 2014) (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000)). Therefore, any tort arising from the infringing use of Alibaba's marks on a website occurred in the state where the server maintaining that site is located. *See, e.g.*, *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 571 (E.D.N.Y. 2011).

York. Alibaba relies on cases including *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002), and *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No., 16 Civ. 2942, 2017 WL 2378369 (C.D. Cal. May 31, 2017), to support its argument that Alibabacoin is subject to jurisdiction based on its anticipated presence on these coin exchanges.

This argument fails. First, those cases involve claims under the Securities Exchange Act, which "provides for nationwide service of process" and thus requires only that a nonresident has "sufficient contacts with the *United States*, not any particular state" to establish personal jurisdiction. *Vancouver Alumni Asset Holdings Inc.*, 2017 WL 2378369, at *5 (emphasis added) (quoting *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985)) (quotation marks omitted). In contrast, "the Lanham Act does not provide for nationwide service of process," and therefore Alibaba must establish personal jurisdiction under New York's long-arm statute. *Chanel, Inc. v. Doubinine*, No. 04 Civ. 4099, 2008 WL 4449631, at *1 (E.D.N.Y. Oct. 2, 2008). Contacts with the United States as a whole are not relevant to the question of specific jurisdiction under New York law.[5]

Second, Alibaba provides no support for the proposition that the New York long-arm statute covers Alibabacoin's purported intention to list its coins on New York coin exchanges at some point in the future. To the contrary, the fact that Alibabacoin contemplates offering Alibabacoin on New York-based coin exchanges is not sufficient to create personal jurisdiction under § 302(a)(1). *Cf. In re Platinum & Palladium Antitrust Litig.*, No.14 Civ. 9391, 2017 WL 1169626, at *46 (S.D.N.Y. Mar. 28, 2017) ("[A foreign company's] presence on [the New York Mercantile Exchange], or any other domestic [over-the-counter] market or exchanges, fails to

---

[5] Defendants' use of U.S.-based media and U.S.-based platforms, such as GoDaddy.com, Facebook, Youtube, and Twitter (Dkt. No. 17 at 10), is also irrelevant to the question of personal jurisdiction in New York.

establish that it expressly aimed its conduct at the U.S. . . .")  Indeed, in the securities context, "the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings . . . without thereby subjecting themselves to New York jurisdiction for unrelated occurrences." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000).  Alibaba offers no reason why cryptocurrency exchanges should be treated differently for purposes of jurisdiction.

Similarly, the fact that Alibabacoin uses U.S. dollars to project the value of its cryptocurrency and to quantify its market capitalization is insufficient to establish personal jurisdiction in New York.  *Cf. Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12 Civ. 8852, 2018 WL 922191, at *4 (S.D.N.Y. Feb. 15, 2018) (noting that defendants "denominated 80% of the securities" in question in U.S. dollars in a *securities fraud* case).  Again, personal jurisdiction in securities cases turns on *national contacts*, but that is not the case for trademark suits.

Finally, the Court addresses § 302(a)(3)(ii) of New York's long-arm statute, which provides for personal jurisdiction where the defendant "commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  Jurisdiction under § 302(a)(3)(ii) has five elements:

> (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011).

At this stage, the Court cannot conclude that the existence of the third element—an injury in New York—is reasonably probable. Alibaba has not established "a non-speculative and direct New York-based injury to its intellectual property rights." *Pablo Star*, 170 F. Supp. 3d at 607 (quoting *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 220 (2d Cir. 2013)).

The New York Court of Appeals' analysis in *Penguin* is instructive: that case addressed the related question of how to determine the "situs of injury" in "copyright infringement cases involving the uploading of a copyrighted printed literary work onto the internet." 16 N.Y.3d at 301–02. The Court of Appeals held that the situs of the injury in such cases is "the location of the copyright holder," but it left open whether the same rule applies in copyright and trademark cases that do not allege "digital piracy." *Id.* at 302, 307 n.5; *see also Forties B LLC v. Am. W. Satellite, Inc.*, 725 F. Supp. 2d 428, 434 n.9 (S.D.N.Y. 2010) (noting that "New York law is presently unsettled on the question of when copyright and trademark torts involving out-of-state infringement cause injury to property within the forum state"). The *Penguin* court did, however, identify two critical factors relevant to its situs-of-the-injury analysis: (1) the unique jurisdictional problems posed by cases involving the internet, and (2) the nature of the "unique bundle of rights granted to copyright holders." 16 N.Y.3d at 304–05.

Here, as in *Penguin*, both factors point to the conclusion that the location of the trademark holder—in this case, China—is the situs of Alibaba's injury. First, the crux of Alibaba's claimed injury cannot be easily circumscribed to a specific location where it lost business: instead, "the alleged injury in this case"—i.e., Alibaba's loss of business, reputation, and goodwill—"involves online infringement that is dispersed throughout the country and . . . the world." 16 N.Y.3d at 305.

14

As to the second factor, in trademark cases and copyright cases alike, plaintiffs "suffer[] something more than . . . indirect financial loss" from infringement. *Id.* at 305. The paradigm harm in a trademark case—"public confusion as to source," *Silverman v. CBS Inc.*, 870 F.2d 40, 48 (2d Cir. 1989)—is abstract, intangible, and often irreparable. *See Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005); *Penguin*, 16 N.Y.3d at 306.

Therefore, infringement of Alibaba's trademarks most likely causes Alibaba injury in China, its place of business, in the form of reputational harm and loss of business and goodwill. *See Int'l Diamond Importers, Inc. v. Med Art, Inc.*, No. 15 Civ. 4045, 2017 WL 2839640, at *5 (S.D.N.Y. June 29, 2017) (applying the logic of *Penguin* to reach the same conclusion); *see also Pablo Star*, 170 F. Supp. 3d at 607 ("There is considerable authority for the proposition that 'the torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held.'" (quoting *McGraw–Hill Co. v. Ingenium Tech. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005)) (alterations omitted).

It is also important to note that, in some cases involving infringement on websites, courts may still apply the logic of "traditional commercial tort cases to equate a plaintiff's injury with the place where its business is lost or threatened." *Penguin*, 16 N.Y.3d at 305. For example, in *Energy Brands Inc. v. Spiritual Brands, Inc.*, the plaintiff was injured in New York by the defendants' trademark infringement because the "[d]efendants' goods were purportedly passed off and sold to New Yorkers who were actually or potentially confused as to their origin." 571 F. Supp. 2d 458, 471 (S.D.N.Y. 2008). "'Harm to a business in the New York market through lost sales or lost customers' may meet the requirement of injury in the forum state, but 'those lost sales must be in the New York market, and those lost customers must be New York customers.'" *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (alterations and citation

omitted) (first quoting *Energy Brands*, 571 F.Supp.2d at 467, second quoting *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008)).

Here, Alibaba has not demonstrated, or even alleged, that "its actual or potential New York customers were confused or deceived merely by viewing images of [its trademarks] on defendants' website[s]." *Energy Brands*, 571 F. Supp. 2d at 471. Besides the diffuse and derivative economic injuries of loss to business reputation and goodwill, which were analyzed above, Alibaba has failed to identify a specific economic injury in New York, *see Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 576 (S.D.N.Y. 2006), *aff'd*, 277 F. App'x 92 (2d Cir. 2008), nor has it alleged the existence of a New York market in which it lost actual or potential customers to Alibabacoin. To the contrary, Alibaba expressly disclaims any intention to enter the cryptocurrency market, in New York or anywhere else. (Compl. ¶ 54.) Without allegations of specific, non-speculative harm in the form of actual or potential injury in a New York market for its services, Alibaba cannot establish a New York-based injury under an economic tort theory.

In sum, Alibaba has not met its burden to establish a reasonable probability that the Court has personal jurisdiction over Alibabacoin.

**IV.    Conclusion**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied, without prejudice to renewal upon an adequate showing of personal jurisdiction, and the temporary restraining order is dissolved.

SO ORDERED.

Dated: April 30, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge