UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALIBABA GROUP HOLDING LIMITED,<br><br>                              Plaintiff,<br><br>                -v-<br><br>ALIBABACOIN FOUNDATION, et al.,<br>                             Defendants. | 18-CV-2897 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

       Alibaba Group Holding Limited ("Alibaba"), the parent corporation for a multinational web-services conglomerate, has filed suit against Alibabacoin Foundation a/k/a ABBC Foundation; ABBC Block Chain IT Solutions LLC; Alibabacoin General Trading FZE; Alibabacoin Foundation LLC; Jason Daniel Paul Philip; and Hasan Abbas (collectively, "Defendants"), alleging that Defendants have been unlawfully using Alibaba's trademarked names and symbols to promote a cryptocurrency—called AlibabaCoin or Alibaba Coin—that Defendants are offering for sale. In April 2018, Alibaba sought a preliminary injunction barring Defendants from using Alibaba's protected marks "anywhere in the United States, including in connection with the provision of products or services to internet users located in the United States," during the pendency of this suit. (Dkt. No. 17 at 18.) This Court denied Alibaba's application, holding that Alibaba had "not met its burden to establish a reasonable probability that the Court has personal jurisdiction over [Defendants]." (Dkt. No. 59 at 16.) Denial, however, was "without prejudice to renewal upon an adequate showing of personal jurisdiction." (*Id.*)

       Alibaba has now renewed its application for a preliminary injunction. (Dkt. No. 119.) Alternatively, it asks this Court to compel Defendants to produce certain documents that, it

argues, would support its entitlement to the requested relief. (Dkt. No. 121.) As explained below, the present record supports entry of a preliminary injunction. Accordingly, Alibaba's renewed application for a preliminary injunction is granted and its motion to compel is denied as moot.

I.      **Background**

Familiarity with the Court's prior opinion in this case is presumed. *See Alibaba Grp. Holding Ltd. v. Alibababacoin Foundation*, No. 18 Civ. 2897, 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018).

Plaintiff Alibaba is the parent company for "the largest online and mobile commerce group of businesses in the world." (Dkt. No. 19 ¶ 3.) Incorporated in the Cayman Islands and operating principally out of the People's Republic of China (Dkt. No. 1 ¶ 2), Alibaba enjoys global reach through its "renowned e-commerce platforms," as well as "numerous other businesses in the fields of cloud computing, digital media and entertainment, innovation and technology" (Dkt. No. 19 ¶ 4), and it courts international investors by offering securities that trade on the New York Stock Exchange (Dkt. No. 19 ¶ 3). In an effort to safeguard its international reputation, Alibaba has secured the exclusive right to certain uses of its various trade names and symbols by collecting trademarks in the United States and around the world. (Dkt. No. 1 ¶¶ 11–28, 52.)

On April 2, 2018, Alibaba brought suit against Defendants, a group of Dubai- and Belarus-based companies and individuals involved in the development and marketing of a novel cryptocurrency known as AlibabaCoin or Alibaba Coin. (Dkt. No. 1 ¶¶ 3–7, 43.) According to Alibaba's complaint, Defendants have published a variety of promotional materials that impermissibly use Alibaba's trademarks in an effort to align AlibabaCoin with Alibaba in the minds of potential consumers. (Dkt. No. 1 ¶¶ 42–46.) Owing to Defendants' marketing efforts,

the complaint goes on, internet users have indeed already begun—erroneously—to associate AlibabaCoin with Alibaba. (Dkt. No. 1 ¶¶ 47–49.)

Soon after Alibaba filed its complaint, this Court issued a temporary restraining order barring Defendants from making misleading use of Alibaba's protected marks in the United States and from making false or misleading statements about those marks in connection with the sale or promotion of goods and services to any parties located in the United States. (Dkt. No. 10 at 2–3.) At Alibaba's request, the Court further ordered Defendants to show cause why a preliminary injunction of similar scope should not enter. (Dkt. No. 10 at 1–2; Dkt. No. 17.)

On April 30, 2018, after hearing from Defendants, this Court dissolved the temporary restraining order and declined to enter a preliminary injunction, holding that Alibaba had failed to carry its burden of "establish[ing] a reasonable probability that the Court has personal jurisdiction over [Defendants]." (Dkt. No. 59 at 16.) The Court made clear, though, that this holding did not prevent Alibaba from renewing its application for a preliminary injunction "upon an adequate showing of personal jurisdiction." (*Id.*) Consequently, Alibaba requested an order authorizing it to take expedited limited jurisdictional discovery, "so as to obtain information that is uniquely controlled by Defendants regarding their ties to New York and the United States." (Dkt. No. 68 at 1.) That request was granted. (Dkt. No. 71.)

Now with the benefit of evidence obtained through discovery, Alibaba has renewed its application for a preliminary injunction. (Dkt. No. 119.) It has also asked the Court to compel Defendants to produce seven categories of documents that could bear on the question of personal jurisdiction and that, it contends, Defendants have unjustifiably withheld. (Dkt. No. 121.)

The Court concludes, for the reasons that follow, that Alibaba has adequately demonstrated its entitlement to a preliminary injunction on the existing record. As a result, there

is no need for further jurisdictional discovery at this stage, and Alibaba's motion to compel is accordingly denied as moot.

## II. Legal Standard

Where, as here, a party moves for a preliminary injunction against a party that has not consented to the Court's exercise of personal jurisdiction, the movant bears the burden of showing "at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction" over the non-moving party. *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990). If the movant successfully makes this showing, a preliminary injunction may enter only if the movant has gone on to demonstrate: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor"; (2) "irreparable harm in the absence of the injunction," *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004); relatedly, (3) that "the balance of hardships" between the parties "tips in the [movant's] favor"; and (4) "that the 'public interest would not be disserved' by the issuance of a preliminary injunction," *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

## III. Discussion

As this Court has previously noted, Defendants have offered three principal reasons for denying a preliminary injunction. They contend that Alibaba has failed to establish: (1) this Court's subject-matter jurisdiction over the suit; (2) this Court's authority to exercise personal jurisdiction over Defendants; and (3) a likelihood of success on the merits. (Dkt. No. 59 at 4.) This Court has already held that federal subject-matter jurisdiction is proper here (Dkt. No. 59 at 4–5), so the only issues that remain are personal jurisdiction and Alibaba's likelihood of success on the merits.

4

## A. Personal Jurisdiction

Under Federal Rule of Civil Procedure 4(k), "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Alibaba has served summonses on Defendants (Dkt. Nos. 38–44), so this Court may properly take personal jurisdiction over Defendants if a New York state court could lawfully do the same.[1] And, as the Court has previously explained (Dkt. No. 59 at 5–6), whether a New York state court may exercise personal jurisdiction over any given defendant in any given suit depends on whether such an exercise comports with both (1) the state's long-arm statute, N.Y. C.P.L.R. § 302(a); and (2) the Due Process Clause of the U.S. Constitution. *See LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).

### 1. New York's Long-Arm Statute

New York's long-arm statute authorizes the state's courts to "exercise personal jurisdiction over any non-domiciliary" that "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). As this Court has previously recognized (Dkt. No. 59 at 8), "proof of one

---

[1] Defendants briefly challenge the adequacy of service (Dkt. No. 30 at 25), claiming that the methods by which they were served—email and Federal Express—were not "reasonably calculated to give notice," as the Federal Rules of Civil Procedure and the U.S. Constitution's Due Process Clause both require. Fed. R. Civ. P. 4(f)(2); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 ("The reasonableness and hence the constitutional validity of any chosen method [of service] may be defended on the ground that it is in itself reasonably certain to inform those affected . . . ."). This argument is frivolous. Here, Alibaba effected service in the precise manner this Court directed (Dkt. No. 10 at 3), which is in itself sufficient to comply with the Federal Rules, absent any indication that the court-ordered method of service is prohibited by international agreement, *see* Fed. R. Civ. P. 4(f)(3). And the methods of service employed here clearly satisfy constitutional due-process requirements; that service was reasonably calculated to provide notice of this lawsuit is self-evident, given that Defendants' counsel entered an appearance in the action just days after service was effected. (Dkt. Nos. 26, 38–44.)

transaction in New York is sufficient to invoke jurisdiction" under this provision, so long as the transaction was "purposeful and there is a substantial relationship between the transaction and the claim asserted," *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988). In denying Alibaba's initial request for a preliminary injunction, the Court observed that Alibaba had "not alleged that even a single sale of Alibabacoin ha[d] occurred in New York, much less presented sufficient proof of commercial activity to justify a preliminary injunction." (Dkt. No. 59 at 8–9.) Now, however, Alibaba has cured that defect. During discovery, Defendants produced a list of the email addresses associated with AlibabaCoin investors (Dkt. No. 120-1), and an investigation has revealed that at least one of these email addresses—connected to three transactions—belongs to an individual who overwhelmingly appears to be a New York resident (Dkt. No. 120 ¶¶ 4–13).

Defendants nowhere dispute that Alibaba has presented evidence that at least one New York resident has purchased AlibabaCoin on at least three occasions. Instead, they argue that these sales "did not occur in the United States" because they "consist of ledger entries made in Minsk, Belarus, following observation of changes in 'blockchain' data outside the United States." (Dkt. No. 130 at 1.) This argument is unpersuasive. When an individual uses her debit card to make an online purchase from an out-of-state vendor, for example, it would strain common usage to say that the transaction occurs at the potentially remote location of the servers that process the buyer's banking activities and not at the location where the buyer clicks the button that commits her to the terms of sale. Certainly, Defendants have pointed to no authority interpreting New York's long-arm statute in such a counterintuitive way.

Defendants next argue that Alibaba has failed to show that their role in the transactions at issue was "purposeful." *Kreutter*, 71 N.Y.2d at 467. How could it be their doing, Defendants ask, if "unbeknownst to [them]," New York-based users of their website chose to effectuate

6

cryptocurrency sales by initiating "data exchanges" with Defendants' out-of-state electronic "apparatus"? (Dkt. No. 130 at 2.) Defendants' argument appears to boil down to the questionable claim that an out-of-state vendor selling intangible goods and services online has not acted intentionally with respect to an in-state buyer's subsequent purchase decision. Such a proposition, predictably enough, runs contrary to precedent. *See, e.g.*, *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (holding that a website operator transacted business in New York under the long-arm statute by "transmit[ting] files to customers in exchange for membership fees"); *Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 491–92 (S.D.N.Y. 2002) (holding that a website operator transacted business in New York under the long-arm statute when it made an interactive directory of manufacturing and industrial companies available on its website); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565–66 (S.D.N.Y. 2000) (holding that a website operator transacted business in New York under the long-arm statute when its website would permit a user to apply for a loan); *cf. Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (holding that "long-arm jurisdiction" arising from the in-state transaction of business can lie "over commercial actors and investors using electronic and telephonic means to project themselves into New York").

Finally, Defendants argue that even if its New York–based transactions could support personal jurisdiction under the long-arm statute for some purposes, the trademark and false-advertising claims that Alibaba presses here lack the requisite "substantial relationship" with those transactions. *Kreutter*, 71 N.Y.2d at 467. According to Defendants, this Court's exercise of personal jurisdiction based on an in-state transaction involving Defendants' infringing conduct can extend no further than the particulars of that specific transaction and can "in no way establish

7

personal jurisdiction with respect to other alleged acts of infringement." (Dkt. No. 130 at 2.) But this argument "too narrowly construes the nexus requirement, which merely requires the cause of action to 'relate to' [Defendants'] minimum contacts with the forum." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010). Given Alibaba's evidence that over one thousand New York users had visited Defendants' website by mid-June 2018 (Dkt. No. 112 at 28:8–15), Alibaba has established a reasonable probability that the transactions at issue here are not isolated instances, "but rather a part of a larger business plan" that involves the purposeful marketing and sale of AlibabaCoin to, among others, New York consumers, *Chloé*, 616 F.3d at 167.

Ultimately, by adducing evidence that a New York resident has purchased AlibabaCoin through Defendants' website, Alibaba has demonstrated a reasonable probability that Defendants have transacted business in New York within the meaning of New York's long-arm statute.[2]

---

[2] Defendants object to the treatment of all Defendants "as a collective whole," arguing that Alibaba must "identify the specific way in which each individual Defendant acquired a nexus with New York that is sufficiently robust and intentional to warrant an exercise of jurisdiction." (Dkt. No. 30 at 16–17; *see also* Dkt. No. 30 at 10.) At the preliminary-injunction stage, though, Alibaba need only demonstrate a reasonable probability of personal jurisdiction. Here, although Defendants point out that the corporate entities named as defendants are not interchangeable (Dkt. No. 35 ¶¶ 13–15), Alibaba has raised a reasonable probability that these commonly owned and managed entities, which are lumped together in Defendants' own marketing materials (Dkt. No. 1-2 at 20–22; Dkt. No. 35 ¶ 1), operate jointly to facilitate the cryptocurrency sales that make personal jurisdiction appropriate here. As for the corporate officers who are named as defendants, a corporation's jurisdiction-conferring, in-state activities may be imputed to its officers where the officers "exercise[] some control" over those activities. *Chloé*, 616 F.3d at 168 (quoting *Kreutter*, 71 N.Y.2d at 467). Alibaba has named as defendants the individual officers whom Defendants' own website described as Alibaba Foundation's Chief Executive and Chief Technical Officers at the time the suit was filed in April 2018. (Dkt. No. 1 ¶¶ 6–7; Dkt. No. 1-1.) There is at least a reasonable probability that those high-level officers exercised some degree of control over Defendants' sales activities at the time of the March 2018 transactions that support personal jurisdiction (Dkt. No. 120 ¶ 5), even if Defendants maintain that one of the officers is no longer involved with AlibabaCoin (Dkt. No. 35 ¶ 11).

## 2. Due Process Clause

In addition to complying with the state long-arm statute, New York's exercise of personal jurisdiction over Defendants must comport with the U.S. Constitution's Due Process Clause in order for this Court to assume jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k). Alibaba never argues that Defendants are sufficiently connected to New York to be subject to general, all-purpose jurisdiction in the state, so this Court must determine whether New York could constitutionally exercise case-specific jurisdiction over Defendants in connection with this action. Due process requires that a forum state's exercise of specific jurisdiction over a defendant must be limited to controversies arising out of or related to that defendant's forum-state activities, *Chloé*, 616 F.3d at 166, and that those activities reflect the defendant's purposeful availment of "the privilege of conducting activities" within the state, *id.* at 171 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Moreover, the exercise of jurisdiction must be reasonable under the circumstances. *See id.* at 172–73.

In holding that the exercise of personal jurisdiction over Defendants here complies with New York's long-arm statute, the Court has already explained that Alibaba's claims bear a relational nexus to Defendants' forum-state activities and that those activities constitute the purposeful transaction of business in New York. Where those prerequisites to the application of New York's long-arm statute are satisfied, "the constitutional requirements of personal jurisdiction are [likewise] satisfied." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006); *accord Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008); *see also Chloé*, 616 F.3d at 171 (holding that asserting personal jurisdiction in a trademark case over a defendant that had "offer[ed] bags for sale to New York consumers on [a] website and . . . s[old] bags—including at least one counterfeit . . . bag—to New York consumers" satisfied due process "for the same reasons that it satisfie[d] New York's long-arm

9

statute"); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003 WL 21511957, at *5 (S.D.N.Y. July 1, 2003) (defendant that "maintain[ed] an interactive website from which at least one New York resident purchased an accused product," advertised in the United States, and otherwise sold items to New York residents had "purposefully availed [itself] of the privilege of conducting business in New York" for purposes of a trademark claim).

Defendants, however, argue that an exercise of personal jurisdiction here would fall afoul of the Due Process Clause's reasonableness requirement, given among other things that Alibaba "is a Cayman Islands entity which conspicuously lacks any New York or United States presence." (Dkt. No. 130 at 3.) Even if an exercise of personal jurisdiction that satisfies New York's long-arm statute is not *ipso facto* reasonable under the Due Process Clause, the Court nevertheless concludes on the specific facts of this case that Alibaba has adequately demonstrated a probability that an exercise of personal jurisdiction is reasonable here.

In assessing reasonableness,

> [a] court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Chloé*, 616 F.3d at 173 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)). Here, Defendants have presented no evidence demonstrating that, "in this modern age and for [litigants] with obvious familiarity with internet communication," subjecting them to "litigation in New York would present so great an inconvenience as to constitute a deprivation of due process." *Savage Universal Corp. v. Grazier Constr., Inc.*, No. 04 Civ. 1089, 2004 WL 1824102, at *11 (S.D.N.Y. Aug. 13, 2004). Further, New York has a clear interest in protecting in-state consumers from "confusion resulting from the misappropriation of trademarks or trade

dress," *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 437 (S.D.N.Y. 1996), and Alibaba likewise has an interest in safeguarding its corporate reputation among potential New York customers or investors. Finally, nothing suggests that an exercise of personal jurisdiction here would be inefficient or would trench on the prerogatives of other states. To be sure, Defendants point out that Alibaba has initiated similar proceedings in the United Arab Emirates, challenging trademark rights Defendants have been granted in that country. (Dkt. No. 123 ¶¶ 11–14; Dkt. No. 130 at 3.) But notwithstanding these foreign proceedings, there is nothing unreasonable about Alibaba's turning to a court in the United States to protect its *United States* trademarks, to enjoin Defendants from committing infringing acts *in the United States*, and otherwise to seek relief under *United States* (and New York) law.

In sum, Alibaba has demonstrated a reasonable probability that a New York state court could lawfully exercise personal jurisdiction over Defendants in connection with this suit and that, as a consequence, Federal Rule of Civil Procedure 4(k) authorizes this Court to do the same.

### B. Likelihood of Success on the Merits

Because success on any of the seven causes of action asserted in the complaint would entitle Alibaba to the injunctive relief it seeks, Alibaba need only demonstrate that it is likely to prevail on at least one of them. *See Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 250 (D.D.C. 2003). The Court therefore limits its analysis to Alibaba's first cause of action, trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

Under the Lanham Act, Alibaba is entitled to relief if it shows that Defendants have "use[d] in commerce, without consent," any of its "'registered mark[s] in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion." *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)). Here, Alibaba has demonstrated, among other things, that it holds a

11

registered trademark protecting its exclusive use of the term "Alibaba" in connection with "computer software for use in exchanging information via global computer networks and online from a computer database and the internet." (Dkt. No. 1-4.) And there is ample evidence that Defendants have used "Alibaba" in connection with their online commercial ventures in a way that is likely to cause confusion. Indeed, the record contains evidence that consumer confusion is actually occurring, with online articles expressing uncertainty as to whether "this new AlibabaCoin [is] made by" Alibaba (Dkt. No. 1-39 at 1) or even mistakenly attributing AlibabaCoin to "the global retailer and wholesaler Alibaba" (Dkt. No. 1-41 at 1).

Defendants nowhere contest the validity of Alibaba's trademarks, nor do they deny that they have used Alibaba's marks in an area of commerce that would ordinarily fall within Alibaba's legally protected turf. Instead, they argue that Alibaba has abandoned its trademark protection in the commercial area in which they operate because Alibaba has "repeatedly stated that it is not interested in moving into the cryptocurrency space." (Dkt. No. 1 ¶ 54; Dkt. No. 30 at 12–13.) But Defendants point to no authority supporting the proposition that a trademark-holder that has made consistent use of its protected mark in a given commercial context, as Alibaba has done in the internet-services context, has somehow acquiesced in infringing uses of that mark in all other commercial contexts, no matter how nearly those other contexts verge on the trademark-holder's own sphere of operations. Accepting this view of abandonment would render American trademark law largely ineffectual.

Finally, Defendants quibble with the adequacy of Alibaba's evidentiary showing that consumer confusion is occurring. (Dkt. No. 30 at 10–12.) But "courts have not found evidence of actual confusion necessary to show a likelihood of confusion." *Register.com, Inc. v. Domain Registry of Am., Inc.*, No. 02 Civ. 6915, 2002 WL 31894625, at *11 (S.D.N.Y. Dec. 27, 2002).

Defendants have cast little doubt on Alibaba's evidence that AlibabaCoin's promotional material has explicitly equivocated on the cryptocurrency's relationship to Alibaba (Dkt. No. 1-35 at 3), employed imagery related to Alibaba (Dkt. Nos. 1-36, 1-37, 1-38), and disclosed Defendants' plans to expand into e-commerce, Alibaba's "core business." (Dkt. No. 1 ¶ 51; Dkt. No. 1-42 at 2.) Alibaba's further demonstration that Defendants' likely misleading marketing tactics have had the predictable effect of generating actual consumer confusion, then, is merely icing on the cake. And although Defendants point to a March 2018 press release in which they disclaim any relationship between AlibabaCoin and Alibaba, that release itself acknowledges that Defendants have "received many inquiries regarding the relationship between AlibabaCoin" and Alibaba. (Dkt. No. 29-3 at 1.) A single disclaimer buried at the bottom of a single press release is likely insufficient to cure any future confusion that might result from Defendants' continued use of Alibaba's protected marks in connection with the marketing and sale of AlibabaCoin.

Alibaba has therefore adequately demonstrated that it is likely to succeed on the merits of its Lanham Act infringement claim. Because Defendants never challenge Alibaba's showing that it is likely to suffer irreparable harm in the absence of an injunction, that the balance of hardships tips in Alibaba's favor, or that an injunction is consistent with the public interest, the Court concludes that Alibaba has shown that it is entitled to preliminary injunctive relief.[3]

---

[3] In connection with their personal-jurisdiction argument, Defendants briefly argue that Alibaba would not suffer ongoing harm in the United States absent an injunction because Defendants have purportedly taken steps to prevent United States citizens or residents from purchasing AlibabaCoin. (Dkt. No. 130 at 3.) To the extent that this argument is intended to challenge the adequacy of Alibaba's showing of irreparable harm, it is unconvincing. Defendants have never seriously disputed Alibaba's persuasive demonstration that Defendants' continued use of Alibaba's trademarks in connection with the promotion of AlibabaCoin would put Alibaba at "risk of losing control of the public's perception of its business." (Dkt. No. 17 at 16.) Indeed, this Court has already expressed its belief "that there is irreparable harm if there is likelihood of success on the merits." (Dkt. No. 66 at 59:24–25.) After all, even if *AlibabaCoin* is not sold to United States consumers—a proposition that in any event contradicts the present

## IV. Conclusion

For the foregoing reasons, Alibaba's renewed application for a preliminary injunction is GRANTED, and its motion to compel discovery is DENIED as moot.

Accordingly, this Court hereby (1) enjoins Defendants from using the ALIBABA Marks, as Alibaba has defined that term in its application for a preliminary injunction, alone or in combination with any words, terms, designations, marks, or designs—as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of the ALIBABA Marks—anywhere in the United States, including in connection with the provision of products or services to internet users located in the United States, and enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns—and all those in active concert or participation with them or having knowledge of the causes of action—from enabling or assisting Defendants in such uses, and (2) enjoins Defendants from making false or misleading statements concerning the ALIBABA Marks in the sale, advertising, or promotion of Defendants' goods and services to any parties located in the United States, alone or in combination with any words, terms, designations, marks, or designs, as well as any mark, image, or depiction that is confusingly similar or likely to impair the ALIBABA Marks, and enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns—and all those in active concert or participation with them or having knowledge of the causes of action—from making or assisting Defendants in making such statements.

---

record—those consumers' exposure to online advertising likely to create brand confusion could affect their willingness to purchase from or invest in *Alibaba*, the party that claims injury. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988) ("In a Lanham Act case a showing of likelihood of [brand] confusion establishes both a likelihood of success on the merits and irreparable harm.").

The Clerk of Court is directed to close the motion at Docket Number 121.

SO ORDERED.

Dated: October 22, 2018
       New York, New York

                                            J. PAUL OETKEN
                                      United States District Judge